JULIA SMITH GIBBONS, Circuit Judge,
concurring in the judgment.
I agree that we must affirm the district court because Mr. Ahmed cannot establish, by a preponderance of the evidence, that the United Kingdom was the children’s habitual residence. And I agree that our precedent keeps open the possibility of considering shared parental intent in cases involving especially young children. However, we need not adopt and apply such a standard in this case.
The district court recognized that evaluating acclimatization was not easy, noting that the Ahmed children were too young to examine the impact of school, sports, extra-curricular activities, or meaningful friendships. The court, however, went on to conclude that the children received adequate medical care in both countries, had “ample clothes, toys, and the other material necessities of infant and toddler care” in both countries, and that there was a network of familial support in both countries. DE 31, D. Ct. Op., Page ID 715. Finding these factors to be equal, the court looked to the amount of time that the children spent in each country—which weighed in Mrs. Ahmed’s favor—and held that Mr. Ahmed could not establish that the United Kingdom was the children’s habitual residence.
This should be enough to resolve the case under the acclimatization test. We have said that the acclimatization test is fact and circumstance specific. See Robert v. Tesson, 507 F.3d 981, 987 (6th Cir. 2007). And we prefer this standard because it ensures a child remains with her family and social environment. Id. at 991-92. We do our best to focus on the child and her past experiences, not the parents .and their future intentions. Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir. 1993). Here, the district court’s findings are focused on the family and social environment in each location. Faced with a situation involving young children who were not enrolled in schools, sports, or activities, the court instead looked to the children’s access to material possessions, healthcare, and family members. It also looked to the amount of time the children spent in each location. I believe that these factors are indicative of where the Ahmed children had established a family and social environment, where they had “meaningful connections with people and places,” see Robert, 507 F.3d at 996, even if the children could not yet communicate those connections to the court.
*692 The majority asserts that a child who lacks cognizance of her surroundings is necessarily unable to acclimate, which makes the acclimatization standard “generally unworkable.” Maj. Op. at 689. This likely stems from our prior holding that a habitual residence must have a “degree of settled purpose” from the perspective of the child. Simcox v. Simcox, 511 F.3d 594, 602 (6th Cir. 2007) (quoting Robert, 507 F.3d at 989). But it assumes, without support, that the Ahmed children were unable to recognize any benefit from their network- of support and consistency of location.
Furthermore, as the majority recognizes, introducing parental intent as the basis for our analysis in the case of young children does not create a bright-line rule. It necessarily introduces a question that this court will eventually need to answer: How young must a child be for parental intent to matter? Opening the door to shared parental intent does not make the analysis any cleaner, if anything, it creates more fact-specific questions.
- When faced with applying our current acclimatization test to account for young children and adopting a new test of shared intent, I would do the former. There may be a future case where, all- other factors being equal, clear shared parental intent can play a role in determining the habitual residence of especially young children. This is not that case. Given the district court’s findings as to acclimatization, it is enough to say that Mr. Ahmed has not met his -burden to show, by a preponderance of the evidence, that his children were habitual residents of the United Kingdom.